STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1020


LONG'S PREFERRED PRODUCTS, INC.

VERSUS

LINDA LONG MINTON


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 204,291
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.

AFFIRMED. MOTION DENIED.

Thibodeaux, C.J., dissents in part and assigns written reasons.


Richard E. Lee
810 Main Street
Pineville, LA   71360
(318) 448-1391
COUNSEL FOR PLAINTIFF/APPELLANT:
      Long's Preferred Products, Inc.

Larry W. Rivers
4951 Brenman Park Drive, Unit 202
Alexandria, VA   22304-7797
(703) 517-6305
COUNSEL FOR DEFENDANT/APPELLEE:
      Linda Long Minton

AMY, Judge.

The plaintiff filed suit seeking repayment of wages paid to the defendant after she left her employment with the family business. The trial court ruled in favor of the defendant, finding no indication that the defendant agreed to repay those wages after her personal share of the business was valued and sold. However, the trial court denied the defendant's reconventional demand in which she sought wages continuing through the time of trial for work performed in her capacity as a member of the company's Board of Directors. Both parties raise issues on appeal. The plaintiff has also filed a motion for contempt and return of brief, alleging that the defendant's brief includes inappropriate statements and references. For the following reasons, we affirm the judgment of the trial court and deny the motion for contempt and return of brief.

## Factual and Procedural Background

This matter arises from the buy out of the defendant, Linda Long Minton, from the family's business, Long's Preferred Products, Inc. The record indicates Ms. Minton and her brother, Julian W. Long,[1] were each fifty percent shareholders in the family business in July 1997, the date the buy out process began. At that time, Ms. Minton served as the company's Vice-President, while Julian served as President. Both received a salary from the company.

The buy out of Ms. Minton's portion of the company arose on July 17-18, 1997, due to tensions between Ms. Minton and one of the company's employees. Due to Ms. Minton's inability to continue in the work environment, she did not return to a regular work schedule at the company. Julian agreed to buy Ms. Minton's share in the

---

[1]The father of Ms. Minton and Julian W. Long, Julian E. Long, was also a witness at the trial in this matter. Julian W. Long will hereinafter be referred to as "Julian" while Julian E. Long will be referenced by use of his full name.

company.  However, the buy out was to occur only after an inventory was taken and a value placed on the company.  During the valuation period, Ms. Minton continued to receive her $4500 monthly salary.  The plaintiff, Long's Preferred Products, asserts that the continuation of the salary was made with the understanding that the accrued salary would be deducted from the value of Ms. Minton's share at the time of the buy out.  Ms. Minton disputes that an agreement was reached as to repayment.

Long's Preferred Products filed suit, seeking repayment of the salary paid to Ms. Minton after her job functions ceased at the company.  Ms. Minton filed a reconventional demand, alleging that the salary reflected her continued duties as a member of the Board of Directors.  Following a bench trial, the trial court concluded that no oral or written agreement existed requiring Ms. Minton to repay the wages at issue.  Furthermore, with regard to the reconventional demand, the trial court concluded that, although Ms. Minton remained a member of the Board of Directors after she ceased her employment functions, the evidence indicated that the members of the board were not compensated for their duties.  Rather, the salary was related to her function as an employee.

Long's appeals, presenting the following issues for review:

 [1.]    Did the trial court err in holding that Ms. Minton did not agree to repay the monies she received from Long's Preferred Products, Inc.?

[2.]    Did the trial court err when it held that P#5, P#6, and P#7 was not the agreement that the parties had originally agreed to?

Ms. Minton answered the appeal, asserting that:

The Trial Court erred in finding that Ms. Linda Minton was compensated as an employee and not as an officer and director of Long's Preferred Products, Inc.

Subsequent to the filing of Ms. Minton's brief, Long's filed a "Motion and Order for Contempt and Return of Brief for Violation of Uniform Rule - Courts of Appeal 2-

2

12.4 and 2-16.3." Long's alleged that inappropriate reference was made to an unpublished case and that certain allegations contained in Ms. Minton's brief are violative of Uniform Rules - Courts of Appeal, Rule 2-12.4, which requires that briefs be "free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous or irrelevant matters or criticism of any person ...." The motion was deferred to the merits of the appeal.

**Discussion**

*Repayment of Salary*

Long's first contends that the payment of Ms. Minton's salary between the July 18, 1997 cessation of her work duties until the date of the buy out was continued due to an agreement that the sum would be deducted from the amount paid to Ms. Minton at the time of the buy out. Long's contends that the trial court's determination that there was no such agreement was in error. In particular, Long's asserts that Ms. Minton and her brother, Julian, reached an initial, oral agreement whereby Ms. Minton would continue to receive her salary which would be deducted from the proceeds of the buy out. Long's points to an unsigned agreement that includes language requiring repayment, asserting that the agreement memorializes the original agreement. Testimony indicates that Ms. Minton forwarded the buy/sell agreement referenced by Long's to an attorney for review, but that it was never signed. Long's contends that the attorney's attention to typographical errors in the agreement, but lack of any written objection to the inclusion of the repayment language, indicates that the concept of repayment was a part of Ms. Minton and Julian's original agreement. Ms. Minton disputes this assertion, contending that she did not sign the agreement due to her disagreement with the repayment condition.

3

Further, Long's points to portions of Ms. Minton's testimony which, it alleges, reveal internal inconsistencies indicating a lack of credibility. The majority of the statements alleged to be "vague, unsubstantiated, and contradictory" relate to various meetings of the board Ms. Minton alleged occurred. Long's argues that, in light of Julian's clear statements regarding the buy/sell terms agreed to, Ms. Minton's contradictory testimony lacks sufficient weight for the trial court to have ruled in her favor on this issue.

In ruling, the trial court referenced the Louisiana Civil Code's requirements of consent, capacity, and cause, *see* La.Civ.Code arts. 1918, 1927, and 1971,[2] as well as Article 1971's instruction that: "Parties are free to contract for any object that is lawful, possible, and determined or determinable." The trial court then reviewed the testimony offered at trial, explaining:

> Testimony at trial established that Linda Minton and Julian W. Long discussed the buy-out of Mrs. Minton's shares of stock. The parties admitted at trial that they verbally agreed that Mrs. Minton would

[2]The Articles provide:

**Art. 1918.     General statement of capacity**

All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting.

**Art. 1927.     Consent**

A contract is formed by the consent of the parties established through offer and acceptance.

Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.

Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

**Art. 1966.     No obligation without cause**

An obligation cannot exist without a lawful cause.

4

continue to receive her salary during the buy-out. Therefore, the parties admittedly contracted for the payout of Four Thousand Five Hundred and No/100 Dollars ($4,500.00) per month to Mrs. Minton during the period between the agreement to buy back Mrs. Minton's shares of stock and the completion of the buy out. Both parties had capacity as well as consent and they contracted for a lawful cause and determined object. Therefore, a verbal contract was confected between the parties. At some point afterwards a written contract was drawn up for the parties to sign. However, the contract contained a provision that required Mrs. Minton to repay the Forty-Four Thousand and No/100 Dollars ($44,000.00) in salary she received from the time of the agreement to buy back the shares of stock until the time the buy-out was completed. Mr. Ellis Saybe, an Alexandria attorney, was given the document to review for Mrs. Minton, during which time Mr. Saybe circled and corrected a typographical error in the contract. Plaintiff contends that Mrs. Minton admitted that there was an agreement to repay the monies when she testified that she gave the contract to Mr. Saybe because she wanted him to look at it before she signed it and did not mark through the portion requiring her to repay the monies. However, the Court does not find this argument persuasive. Mrs. Minton testified that she refused to sign the contract because she had not agreed to repay the interim salary. Mr. Julian W. Long also admitted that the reason Mrs. Minton refused to sign the contract was due to the provision requiring her to repay the salary. Furthermore, it would not be logical for Mrs. Minton to accept the salary payments as a loan, pay taxes on the monies thereby only receiving a net amount of the payments and then repay the gross amount to the Corporation. Additional evidence of the lack of agreement to repay the funds arises from the testimony of Julian E. Long, Mrs. Minton and Mr. Julian W. Long's father, who testified that he informed Mr. Julian W. Long to remove the Forty-Four Thousand and No/100 Dollars ($44,000.00) from the amount Mrs. Minton would receive as the purchase price for her shares of stock because she did not work for that money and should not receive it. Mr. Julian E. Long told his son this at the time when the latter was preparing a written agreement for the purchase price of Mrs. Minton's shares of stock, not at a time prior to the oral agreement between Mr. Julian W. Long and Mrs. Minton. It appears that this occurred at approximately the time the relations with Mrs. Minton's father and brother, Mr. Julian E. Long and Mr. Julian W. Long, respectively, became strained to the point of no return. It was also around this time when Julian W. Long changed the locks so that Mrs. Minton no longer had access to the Corporation and when Mrs. Minton's salary was abruptly stopped, approximately March 1998. It was not long after this when it became obvious that the agreement to buy-out Mrs. Minton's stock had fallen through. Mrs. Minton thereafter withdrew the offer [for Julian] to purchase her Corporation stock. The Court had an opportunity to view the parties and judge their credibility during trial and, after reviewing the evidence, the Court is of the opinion no agreement existed that required Mrs. Minton to repay the monies she received as salary for that eight (8) month period of buy-out negotiations.

5

Accordingly, the Court finds that the contract to pay Mrs. Minton her salary from the time of the agreement to buy back her stock until the completion of this event did not encompass the obligation for Mrs. Minton to repay the monies she received during this period. As such, Mrs. Minton is entitled to retain the amount she was paid in salary during the time of the buy-out negotiations.

The above reasons for ruling reflect the trial court's acceptance of Ms. Minton's testimony over the version of events offered by Julian. The Louisiana Supreme Court has noted that, "[w]here there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review…." *Parish Nat'l Bank v. Ott*, 02-1562, p. 7 (La. 2/25/03), 841 So.2d 749, 753. This remains true even in the event the appellate court finds that it may have weighed the evidence differently if it had been sitting as the trier of fact. *Id.* Only when the trial court's factual determinations are clearly wrong will the appellate court substitute its own findings for that of the trial court. Our review of the record reveals no such error.

Long's asserts that Ms. Minton's testimony was unreliable due to what it contends were internal contradictions. However, we find little merit in the contention that any such inconsistencies or lack of clarity in her recollection of meetings of an informally operated board necessarily bear on the central question of whether the parties agreed that the continued salary would be deducted from the proceeds of the sale of her share of the company. The testimony, taken as a whole, supports the trial court's determination that she and Julian agreed that her salary would continue during the valuation process. However, the trial court concluded that this initial agreement did not include a provision that the salary would be repaid from the proceeds. This is supported by her testimony that she did not sign the written agreement presented to her as it included this term. Although Julian's testimony was contrary to this, the trial court noted that it was able to view the witnesses and make credibility determinations.

6

Furthermore, although Long's contends that the trial court gave inadequate consideration to the unsigned buy/sell agreement and related documents, the reasons for ruling reveal that consideration was given to this evidence. However, the trial court found that the documents were more supportive of Ms. Minton's position. As the record supports its findings, we find no clear error in the trial court's resolution of the credibility issue in favor of Ms. Minton.

This assignment lacks merit.

*Nature of Compensation*

In her reconventional demand, Ms. Minton sought recovery for wages until the time of trial. She contended that these wages were owed *after* the buy out as her compensation with the company was reflective of her position as an officer of the company and that it was not compensation for her employment-related duties. The trial court denied this request, finding that the officers of the company were not compensated for their work in that capacity. In her answer to the appeal, Ms. Minton questions this finding.

In denying recovery on the reconventional demand, the trial court reasoned:

Ms. Minton claims that she had a verbal contract of employment with Long's Preferred Products, Inc. and that she is owed this salary because she continued to hold a position as officer and director of the Corporation from the time her salary was stopped to date. It is accurate that Mrs. Minton continued to serve as director of the Corporation. Mrs. Minton's purported discharge on Mary [sic] 14, 1998 by the corporate board was nullified in Civil Suit Number 196,819, on the docket of the Ninth Judicial District Court, the Honorable Ross Foote, Presiding. That Judgment was affirmed by the Third Circuit Court of Appeal and amended to specifically declare Ms. Minton a director of the Corporation. However, while the Corporation's tax returns on their face show officer compensation, the evidence established that the officers and directors at the Corporation are not compensated as such. Mrs. Minton was paid as an employee at the Corporation, not as an officer and director. It was stipulated by the parties Mrs. Minton's salary as an employee of the Corporation from October 1991 through April 1997 was Two Thousand Five Hundred and No/100 Dollars ($2,500.00) per

7

month. Mrs. Minton was appointed Vice-President and Secretary-Treasurer of the Corporation on February 24, 1992 while her salary remained the same until May 1997 when it was raised to Four Thousand Five Hundred and No/100 Dollars ($4,500.00) per month. It was additionally stipulated that Ms. Tracy Percy did not receive an increase in salary when she was appointed Secretary - Treasurer in May 1998 nor did Mrs. Eva Long receive an increase in salary when she was appointed Vice-President of the Corporation. Mr. Julian W. Long also testified that he received no salary increase when he became an officer and director of the Corporation. Mrs. Minton discontinued her day-to-day duties as an employee of the Corporation when she agreed to sell her stock, although she remained an officer and director. However, the Court is of the opinion that Mrs. Minton was compensated as an employee, not as an officer and director of the Corporation. Accordingly, Mrs. Minton is not entitled to an award for her salary from March 1998 to date.

Our review of the testimony and related exhibits supports the above-factual conclusions. For example, despite conflicting testimony from Ms. Minton and Julian regarding the nature of their compensation, other members of the board, *i.e.*, Tracy Percy or Eva Long, did not receive an increase in their salary when their position changed from employee only, to that of both employee and board member. This assignment lacks merit.

*Motion for Contempt and Return of Brief*

Long's filed a motion with this court, alleging that references contained in Ms. Minton's brief were inappropriate and violative of the Uniform Rules of the Courts of Appeal. Specifically, the motion complains of reference to a decision of this court rendered in a suit by these same parties, relating to another difficulty with the business. The motion contends that the unpublished opinion was inappropriately referenced and mention was not made to the case's publication status. Long's asserts both that the appellee brief should be returned and that sanctions should be imposed.

Relevant to consideration of the motion are Uniform Rules - Courts of Appeal, Rules 2-12.4 and 2-16.3. Rule 2-12.4, which addresses the requirements of briefs filed with the court, provides, in part:

> The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class or persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Any violation of this Rule shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.

Furthermore, with regard to published/unpublished cases, Rule 2-16.3 provides, in part:

> C. Opinions marked "Not Designated for Publication" shall not be cited, quoted, or referred to by any counsel, or in any argument, brief, or other materials presented to any court, except in continuing or related litigation. Opinions marked "Not Designated for Publication" shall be filed in the clerk's office as public records.

After review of the appellee's brief and references made to the other proceeding, we do not find that those references require return of the brief or imposition of sanctions. Although the opinion is unpublished, it involves the conduct of these parties in another, arguably related matter. In fact, the proceeding is referenced by the trial court in his reasons for ruling. A portion of Rule 2-16.3 permits reference to unpublished opinions if they stem from related litigation. This court is able to assess the relevance/appropriateness of the references and determine whether any weight is to be given the information in question.

With regard to Long's assertion that a statement in Ms. Minton's brief questioning the veracity of statements made by Julian and his father, Julian E. Long, we point out that both briefs call into question the truthfulness or credibility of the opposing party's statements. We do not find sanctions in this regard appropriate. The motion is denied.

**DECREE**

9

For the foregoing reasons, the decision of the trial court is affirmed.  The motion for contempt and return of brief is denied.  All costs of this matter are assessed equally between the parties, Long's Preferred Products, Inc. and Linda Long Minton.

**AFFIRMED.  MOTION DENIED.**

LONG'S PREFERRED PRODUCTS, INC.

VERSUS

LINDA LONG MINTON

THIBODEAUX, J., dissenting in part.

The trial court erroneously held that Ms. Minton refused to agree to repay the monies she received from Long's Preferred Products, Inc.

I am mindful of the deference which should be accorded to the factual findings of a trial court. I am equally cognizant that a court of appeal has a constitutional function to perform and it is entitled to determine if a trial court's verdict is without evidentiary support. *Ambrose v. New Orleans Police Amb. Serv.*, 93-3099, 93-3110, 93-3112 (La. 7/5/94), 639 So.2d 216. In performing this constitutional function, "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination." *Rosell v. ESCO*, 549 So.2d 840, 844-45.

In this case, it seems to me that the objective evidence militates against the weight given to the credibility determinations of the trial court. In the proposed Installment Sale & Act of Pledge, the sum of $732,150.00 was submitted. This sum reflected in part the deletion of $44,000.00 in salary received by Ms. Minton. The

promissory note reflected this same amount. Ms. Minton was asked during her deposition:

> Q. Did you by any chance consult a lawyer by the name of Ellis Saybe?
>
> A. Yes, sir, I did. I took this contract, as a matter of fact, the first time I saw it. Let me make sure I'm saying this right. Yes, sir, I did, because this is Ellis Saybe that caught the typo. *And I did want him to look at it before I signed it.*

Ms. Minton does not mention any objection to deleting $44,000.00 from the total price of the proposed buy out. Her attorney, Mr. Saybe, examined the document and made one minor typographical change deleting "and" and substituting "any" in its place.[1]

Ms. Minton's attorney drafted a letter to Julian W. Long on April 23, 1998. That letter does not mention any disagreement with the pay-back provisions of the Installment Sale & Act of Pledge and the promissory note. Finally, Ms. Minton admits in her deposition that she never returned after July 18th to the corporate offices to perform the services she had previously performed for Long's Preferred Products. She did not, in other words, perform any work, yet she claims to be entitled to $4,500.00 per month for work she did not perform.

I feel simply that Ms. Minton's after-the-fact trial testimony is simply too inconsistent with the hard, objective evidence. I would reverse the trial court on this issue.

For the foregoing reasons, I respectfully dissent.

---

[1]*See* plaintiff's Exhibit P-5, P-6, and P-7.